There is no subject in the laws upon which ancient cases are more obscure, or convey less exclusive information than awards. To adopt them in the rigorous application of the rules of construction, or to pursue them through their endless subtlety of refinement, would be, in truth, to render awards of no use, in the main purpose of their introduction — readjusting the controversies of men before a domestic tribunal, unattended with expense, trouble, or delay. Of this nicety many instances may be adduced, but one will be sufficient to attest it. A submission was to the award of four men by name, so as the same award be made and delivered up in writing by them or any three of them; it required several solemn arguments to convince the Court that (128) these words gave authority to any three of the arbitrators to make the award, they supposing that it could not be the same award unless made by the four. If courts of justice had continued in the practice of scanning awards with such rigid scrutiny, the effect would have been that a mode of trial highly beneficial to mankind must long since have disappeared.
But sound and rational interpretations have at length prevailed, and we are furnished with two rules; one respecting awards in general, in 1 Burr., 277, which is to adopt a liberal construction in order that awards may answer the purpose for which they were intended; the other is in 2 Atkyns, 501, that in mercantile transactions which do not admit of certainty, nice objections ought not to defeat awards. Nevertheless, awards must have, to a common intent, all those qualities the want of which is objected to the present one; but whether that possesses them or not should be examined in the true spirit of these rules, and of some others established by law, to advance the utility of this mode of proceeding.
As to the objection of uncertainty, it should be noted that the parties to this transaction, submittants, and arbitrators, are merchants; amongst whom, to say a sum of money is due, is equivalent to a promise of payment, and so understood by debtor and creditor; and amongst all persons such an acknowledgment will revive a debt barred by the statute of limitations, even if the condition of a bond is that a person shall render a fair, just, and perfect account in writing of all sums received; yet, if the obligor neglects to pay over such sums, he is guilty of a breach of the condition. Douglas, 382; Bache v. Proctor. But if terms of this bond are that the defendant shall acquiesce in and confirm the award *Page 120 
and make payment, if the case may be so, now it is difficult to conceive how he can comply with this condition and yet refuse to make payment on the award. An award that the one should keep the goods in dispute, paying so much to the other, has been construed imperatively that he should pay; L. Raymond, 612; for if the words of an award have (129) any ambiguity in them, they shall be so construed as to give effect to it. The principle of this submission was that whoever appeared to be the debtor should pay; the arbitrators have found who was the debtor, and the consequence must follow.
In the settlement of transactions of this kind, the chief difficulty usually is to fix and ascertain the rule by which the account shall be adjusted; a merchant and factor are more apt to disagree respecting the commissions, extra charges, and price of the produce remitted, than concerning the amount or price of the goods originally consigned. So many unforeseen events arise out of the mode of doing business, and the circumstances of the country that, although they understand each other in the beginning, the application of some rule is necessary to the intervening circumstances. When, therefore, by the interposition of friends, they have ascertained the rule by which their accounts shall be settled, the rest is a mere operation of arithmetic which they, themselves, can as well perform. So that, although the amount of the outstanding debts is uncertain yet it may be rendered certain by the defendant, to whom alone it was known, and who might consequently have availed himself of this clause, inserted exclusively for his benefit. It does not appear on the face of the award that the arbitrators knew there were any outstanding debts due on the concern; and if there were any, it must now be intended, after verdict, that the defendant would have claimed the benefit of this provision.
On the other hand, if the outstanding debts had amounted to a larger sum than is found due from the defendant, a total silence in the arbitrators respecting them might have worked injustice. The other parts of the clause, such as that the defendant shall make it appear that he has taken proper means for the recovery in due time, signify no more than the law would have implied without them; that the company should not sustain the losses occasioned by his negligence. But there are authorities which apply with some force against this objection, as in Rolle, 250, an award that one shall pay his proportion which shall appear due upon an account; so in Strange, 903, it is held that if an (130) award is as final as the nature of the thing will admit of, it is sufficient; as where Marshall, at the instigation of Knightly, brought a qui tam action against Phillips in behalf of himself and the poor of the parish; Phillips for himself, and Knightly in behalf of *Page 121 
Marshall, submitted by bond all matters in difference between the parties to arbitration. It was awarded that Knightly should execute a covenant to indemnify Phillips against all costs, damages, and expenses which happen by means of any further proceedings in the qui tam action; the objection taken to this award was that it was not final, not putting an end to the suit, but only giving a new action of covenant. But it was held that the award was sufficiently final, and that at any rate it was not competent to the defendant to make this objection, and that the arbitrators had done everything they could do to make their award final. To this may be added the case of Beale v. Beale, 3 Vent., 65, where it was awarded that one party should pay his part of the expenses of the voyage, and allow on account his proportion of the loss which should happen to the ship during the voyage; this was held good because the expenses and the loss might be ascertained by calculation.
It is another rule in the construction of awards that if that to which the objection of uncertainty is made, can be ascertained either by the context of the award, or from the nature of the thing awarded, or by a manifest reference to something connected with it, the objection shall not prevail. This rule furnishes an answer to the objection, which states that it does not appear when the debts accrued. Undoubtedly the arbitrators would have exceeded their powers if the debts had accrued after the submission; but that is impossible, from the nature of the transaction, because it appears on the face of the award that the connection closed the 16th July, 1784; consequently all the debts must have accrued before that time.
The meaning of the rule as to the want of mutuality is that the thing awarded to be done shall be a final discharge of all future claims by the party in whose favor the award is made, against the other for the cause submitted. The recovery in this action is an effectual (131) bar against any future claims the plaintiff can set up on account of this award, the judgment here being for the penalty of the arbitration bond.
For these reasons we think there must be judgment for the plaintiff.
NOTE. — See Blackledge v. Simpson, 3 N.C. 30; Bryant v. Milner,post, 485; Carter v. Sams, 20 N.C. 321; Duncan v. Duncan, 23 N.C. 466.
Cited: Stevens v. Brown, 82 N.C. 461; Osborne v. Calvert, 83 N.C. 370;Millinery Co. v. Insurance Co., 160 N.C. 140. *Page 122